1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**

9          **EASTERN DISTRICT OF CALIFORNIA**

10

11   SANDRA L. GRAHAM,                          )   Case No.: 1:22-cv-0622 JLT BAM
                                                )
12                      Plaintiff,              )   ORDER DENYING DEFENDANT'S MOTION
                                                )   TO DISMISS
13          v.                                  )
                                                )   (Doc. 15)
14   SUNNOVA ENERGY INTERNTIONAL, INC.,         )
                                                )
15                      Defendants.             )
                                                )
16   _____)

17          Sandra Graham asserts that Sunnova Energy International, Inc., violated Plaintiff's privacy and

18   accessed her credit report without a permissible purpose.  Graham seeks to hold Sunnova liable for

19   violations of the Fair Credit Reporting Act, California's Consumer Credit Reporting Agencies Act,

20   and invasion of privacy.  (*See generally* Doc. 12.)  Sunnova seeks dismissal of the First Amended

21   Complaint for lack of standing pursuant to Rule 12(b)(1) and failure to state a claim pursuant to Rule

22   12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 15.)  For the reasons set forth below, the

23   motion to dismiss is **DENIED**.

24   **I.      Background and Allegations**

25          Graham reports that she resides in Fresno, California, and was visited at her home by Russell

26   Phillips, a salesperson from Sunnova, on June 3, 2020.  (Doc. 12 at 1-2, ¶¶ 5, 7.)  Graham asserts that

27   during the visit, Phillips asked Graham "to send him an e-mail including her date of birth, complete

28   address and a current energy bill."  (*Id.* at 2, ¶ 8.)  She alleges, "Phillips asked for permission to run a

1

credit check" towards the end of the sales visit.  (*Id.*)  Graham reports that she "indicated … she did not want her credit pulled and did not give Sunnova permission to run a credit check."  (*Id.*, ¶ 9.)  She also "did not sign any authorization for … Phillips or Sunnova to run a credit check."  (*Id.*, ¶ 10.)

According to Graham, "[a]t no point during the interaction did [she] initiate a transaction with Defendant, as [she] was merely receiving information about the solar product."  (Doc. 12 at 2, ¶ 10.)  She also asserts that she "had no prior or ongoing relationship or transactions with [Sunnova]," and "did not agree to go forward with any transaction."  (*Id.*, ¶¶ 12-13.)

Graham asserts that shortly after Phillips left her house, she "received an email stating she did not qualify for solar because of her credit report."  (Doc. 12 at 2, ¶ 14.)  Graham alleges she responded to the email and stated "she did not authorize anyone to run her credit reports and that the signature on the authorization was forged."  (*Id.*, ¶ 15.)  She contends she attempted to reach Phillips by telephone, but she was unsuccessful.  (*Id.*, ¶ 16.)  Graham reports that she "spoke to 'Monica' from Sunnova and told her she had not given permission for Sunnova to run her credit report," and in response Monica informed Graham that "she should contact the credit bureau Equifax." (*Id.*)  Graham alleges she "called Sunnova again in an attempt to resolve the issue but was not able come to a resolution."  (*Id.* at 3, ¶ 17.)

Graham alleges the inquiry from Sunnova remains on her credit report, "affecting her credit score." (Doc. 12 at 3, ¶ 18.)  In addition, she contends that "[t]he consumer report obtained by Sunnova would have included a trove of sensitive personal and private information about [Graham], such as her credit history profile, pay histories, employer information and the like."  (*Id.*, ¶ 21.)  Graham contends Sunnova was not authorized to obtain this report, and instead the company "surreptitiously and intentionally obtained [the] consumer report from a consumer reporting agency without permission." (*Id.*, ¶¶ 19-20.)

She observes: "a consumer report can be obtained only for the specific purposes stated thereunder, including for use in connection with a credit transaction that the consumer initiated, a firm credit offer, employment purposes, or a business transaction in which an individual has accepted personal liability for business credit" pursuant to 15 U.S.C. §1681b and Cal. Civ. Code § 1785.11. (Doc. 12 at 3, ¶ 22.)  Graham alleges, "On information and belief, Defendant has contracts with credit reporting agencies such as Equifax in which it agrees it may obtain and use a consumer report only for

1   a permissible purpose." (*Id.* at 4, ¶ 27.)  She maintains that "Sunnova never had a permissible purpose

2   to obtain Plaintiff's credit report." (*Id.* at 3, ¶ 23.)

3        Graham contends she suffered damages due to the credit inquiry.  (Doc. 12 at 4, ¶ 28.)  She

4   asserts that she "suffered mental and emotional distress, worry, and aggravation as a result of

5   Defendant's actions." (*Id.*, ¶ 32.)  In addition, Graham alleges her "credit profile and credit history has

6   been adversely affected as a result of Defendant's action." (*Id.*)

7        According to Graham, though the conduct alleged, Sunnova "intentionally invaded [her]

8   privacy." (Doc. 12 at 6, ¶ 31[1].)  She asserts, "Sunnova's tactic of forging Plaintiff's signature and

9   surreptitiously pulling Plaintiff's credit file without her consent is highly intrusive and highly offensive

10   to a reasonable person." (*Id.* at 6, ¶ 32.)  Graham also alleges "Sunnova intentionally intruded upon

11   [her] solitude and seclusion," and as a result she suffered damages including "mental and emotional

12   harm and distress, fear, worry, and other losses." (*Id.* at 6, ¶¶ 33-35.)

13        Graham seeks to hold Sunnova liable for violations of the Fair Credit Reporting Act,

14   California's Consumer Credit Reporting Agencies Act, and invasion of privacy.  (Doc. 12 at 4-6.)

15   Sunnova seeks dismissal of the claims, asserting the facts alleged are insufficient to support the claims

16   and Graham fails to establish standing.  (Doc. 15.)

17   **II.**      **Motion to Dismiss under Rule 12(b)(1)**

18        The district court is a court of limited jurisdiction and is empowered only to hear disputes

19   "authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375,

20   377 (1994); *Exxon Mobil Corp v. Allapattah Servs., Inc*., 545 U.S. 546, 552 (2005).  Federal courts are

21   "presumed to lack jurisdiction in a particular case, unless the contrary affirmatively appears." *A-Z Int'l.*

22   *v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003).  Thus, a plaintiff carries the burden of demonstrating

23   the Court has subject matter jurisdiction.  *Kokkonen*, 511 U.S. at 377 (citing *McNutt v. General Motors*

24   *Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)); *Vacek v. United States Postal Serv.*, 447 F.3d 1248,

25   1250 (9th Cir. 2006).

26        Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may challenge a

27

28   [1] There are several paragraphs in the FAC with duplicative numbers. For the sake of clarity, the Court retains the numbers identified in the document.

claim for relief for lack of subject matter jurisdiction. A motion to dismiss under Rule 12(b)(1) "may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Thornhill Pub. Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (citing *Land v. Dollar*, 330 U.S. 731, 735 (1947)). Thus, "[a] jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). The Ninth Circuit explained:

> In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004). On a motion to dismiss under Rule 12(b)(1), the standards that must be applied by the Court vary according to the nature of the jurisdictional challenge.

If a defendant presents a *facial* challenge to the Court's jurisdiction, the Court must presume the truth of the Plaintiff's factual allegations "and draw all reasonable inferences in his favor." *Doe v. Holy*, 557 F.3d 1066, 1073 (9th Cir. 2009); *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003), *cert. denied*, 541 U.S. 1009 (2004). The Court should not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

If a defendant presents a *factual* jurisdictional challenge, the Court "may review any evidence, such as affidavits and testimony." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989); *Warren*, 328 F.3d at 1139. The Ninth Circuit explained:

> Faced with a factual attack on subject matter jurisdiction, 'the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'

*Thornhill*, 594 F.2d at 734 (quoting *Mortenson v. First Fed. Sav. & Loan Assoc.*, 549 F.2d 884, 891 (1977)). If a moving party presents a factual attack, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."

*Savage*, 343 F.3d at 1039 n.2 (citing *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989));

*Assoc. of Am. Med. Colleges v. United States*, 217 F.3d 770, 778-79 (9th Cir. 2000) (same).  Thus, the

Court "may review evidence beyond the complaint without converting the motion to dismiss into a

motion for summary judgment" when resolving a factual attack.  *Safe Air*, 373 F.3d at 1039. The

burden of proof remains with a plaintiff, who has "an affirmative obligation to support jurisdictional

allegations with proof."  *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016).

## III.    Motion to Dismiss under Rule 12(b)(6)

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729,

732 (9th Cir. 2001).  Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks

a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*

*Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Thus, under Rule 12(b)(6), "review is

limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content
> that allows the court to draw the reasonable inference that the defendant is
> liable for the misconduct alleged. The plausibility standard is not akin to a
> "probability requirement," but it asks for more than a sheer possibility that
> a defendant has acted unlawfully. Where a complaint pleads facts that are
> "merely consistent with" a defendant's liability, it "stops short of the line
> between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).  "The issue is not whether a plaintiff will ultimately

prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may

appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  To the extent pleading deficiencies can be cured by the

plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss & Liehe, Inc. v.*

*Northern Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV.    Discussion and Analysis

Sunnova seeks dismissal of the FAC "on the grounds that the FAC lacks federal subject matter

jurisdiction," arguing that Graham fails to allege standing.  (Doc. 15 at 2, *see also id.* at 7-8.)  In

1  addition, Sunnova argues Graham "fails to state a claim upon which relief can be granted," and that

2  dismissal is appropriate under Rule 12(b)(6).  (*Id.* at 2.)

3      **A.   Standing**

4      Because standing is a "threshold question" in "determining the power of the court to entertain

5  the suit," the Court addresses this challenge first.  *See Warth v. Seldin*, 422 U.S. 490, 498 (1975);

6  *Stoianoff v. Montana*, 695 F.2d 1214, 1223-1224 (9th Cir. 1983) ("Standing of parties to bring their

7  claims is a threshold question a court must face before reaching the substantive issues of a case"); *see*

8  *also Langer v. HV Global Group, Inc*., 2021 WL 4777092, at *2 (E.D. Cal. Oct. 12, 2021) (addressing

9  the matter of standing first when the defendant challenged the complaint for both lack of standing and

10  failure to state a claim).

11      To demonstrate standing, a plaintiff "must demonstrate that [she] has suffered an injury-in-fact,

12  that the injury is traceable to the [defendant's] action, and that the injury can be redressed by a

13  favorable decision."  *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011).  An

14  injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized,

15  and (b) 'actual or imminent' not 'conjectural' or 'hypothetical.'"  *Lujan*, 504 U.S. at 560 (omitting

16  internal citations).  An injury is concrete and particularized when a plaintiff suffers discrimination due

17  to barriers at a place public accommodation and those barriers have deterred the plaintiff from

18  returning.  *Doran v. 7-Eleven*, 524 F.3d 1034, 1041 (9th Cir. 2008).  The Ninth Circuit "adopted a

19  two-step framework to determine whether alleged violations of FCRA provisions are sufficiently

20  concrete to confer standing: '(1) whether the statutory provisions at issue were established to protect [a

21  plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the

22  specific procedural violations alleged in this case actually harm, or present a material risk of harm to,

23  such interests.'"  *Tailford v. Experian Info. Sols., Inc*., 26 F.4th 1092, 1099 (9th Cir. 2022) (alteration

24  in original), quoting *Robins v. Spokeo, Inc*. (*Spokeo III*), 867 F.3d 1108, 1113 (9th Cir. 2017).

25      Sunnova argues Graham that "fails to allege Article III standing" because she "does not allege

26  any concrete harm."  (Doc. 15 at 7-8.)  According to Sunnova, "The only harm Plaintiff claims she has

27  suffered is that her credit profile and credit history have been adversely affected because of the credit

28  check and this has caused her to suffer emotional distress."  (*Id.* at 8.)  Sunnova acknowledges that "a

credit inquiry may be sufficient to establish Article III standing," but asserts that "only '[a] credit inquiry that exceeds the scope of section 1681b(a)(3) invades a consumer's right to privacy and results in concrete harm sufficient for Article III standing.'"  (*Id.* at 8, quoting *Adler v. DirectTV, LLC*, 2018 WL 6981838 at *4 (C.D. Cal. Oct. 24, 2018) [modifications in original, emphasis omitted].)  Sunnova maintains the conduct alleged by Graham "is not outside the scope of § 1681b(a)(3), i.e., Sunnova had a permissible purpose to obtain Plaintiff's credit report."  (*Id.*)  Sunnova concludes Graham "has not suffered any concrete injury sufficient to establish standing and her claims should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)."  (*Id.*)

Sunnova did not submit any evidence in support of the motion.  Thus, it appears Sunnova makes a facial challenge under Rule 12(b)(1) by asserting Graham's allegations are insufficient to establish standing.  *See Osgood v. Main Street Mktg., LLC*, 2017 WL 131829, at *4 (S.D. Cal. Jan. 13, 2017) (finding the defendants were "launching a facial challenge to subject matter jurisdiction as no evidence outside the complaint is presented to challenge subject matter jurisdiction"); *PNC Equip. Fin., LLC v. Cal. Fairs Financing Auth.*, 2012 WL 12506870, at *9 n.48 (C.D. Cal. Feb. 9, 2012) (finding a challenge was facial where the defendants identified no evidence to contradict the allegations).  Because there is no evidence to support Sunnova's assertion that the company "had a permissible purpose to obtain Plaintiff's credit report," this statement is disregarded.  Instead, the Court's analysis is constrained to the allegations contained in the complaint.  *See Safe Air*, 373 F.3d at 1038; *Holy*, 557 F.3d at 1073; *see also PNC Equip. Fin.*, 2012 WL 12506870, at *9 n.48 ("the court need only consider the allegations of the complaint" where a facial challenge is made).

In the FAC, Graham alleges Sunnova requested "permission to run a credit check," and Graham responded that "she did not want her credit pulled and did not give Sunnova permission to run a credit check."  (Doc. 12 at 2, ¶¶ 8-9.)  Graham asserts she did not authorize the credit check; "did not agree to go forward with any transaction with [Sunnova], for solar or otherwise;" and she "was merely receiving information about the solar product."  (*Id.*, ¶¶ 10-13.)  Despite this, Sunnova pulled a credit report, and this "inquiry remains on [Graham's] credit report to date, affecting her credit score."  (*Id.* at 2, ¶ 14; *id.* at 3, ¶ 18.)  According to Graham, "[t]he consumer report obtained by Sunnova would have included a trove of sensitive personal and private information about Plaintiff, such as her credit history profile, pay

histories, employer information and the like." (*Id.* at 3, ¶ 21.)  She contends her privacy was invaded because of Sunnova's conduct.  (*Id.* at 4, ¶ 31.)  Graham contends Sunnova is liable for violations of the FCRA, including 15 U.S.C. §§ 1681b, 1681n, and 1681o.  (*Id.*, ¶ 35.)

Significantly, the Ninth Circuit observed that the purpose of the FCRA is "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."  *Nayab v. Capital One Ban USA*, 942 F.3d 480, 492 (9th Cir. 2019) (quoting 15 U.S.C. § 1681, modified emphasis omitted).  The Court observed:

> Congress' concern for privacy in one's consumer report is made clear by the FCRA's (1) general prohibition against obtaining a consumer report except in limited circumstances, 15 U.S.C. § 1681b(f); (2) provision of civil liability for violations of the FCRA, 15 U.S.C. § 1681n, including statutory damages for willful violations, 15 U.S.C. § 1681n; and (3) provision of criminal (and civil) liability for those obtaining a credit report under false pretenses, 15 U.S.C. § 1681q.

*Nayab*, 942 F.3d at 492.  Recognizing the importance of privacy, the Ninth Circuit determined that "obtaining a credit report for a purpose not authorized under the FCRA violates a *substantive* provision of the FCRA."  *Id.* (emphasis in original).  Thus, the Court found a plaintiff "has standing to vindicate her right to privacy under the FCRA when a third-party obtains her credit report without a purpose authorized by the statute, regardless whether the credit report is published or otherwise used by that third-party."  *Id.* at 493.

Graham alleges violations of FCRA provisions—including Section 1681b— that protect "the consumer's substantive right to control who received their credit report and identify any violation of their rights of privacy and information."  *Tailford*, 26 F.4th at 1100 (citing *Syed*, 853 F.3d at 499).  Therefore, Graham identifies a concrete interest and the first prong of the FCRA standing test is satisfied.  *See id.; Nayab*, 942 F.3d at 492-493.  In addition, because Graham contends Sunnova obtained the report for an impermissible purpose, she identified harm to the privacy interest Congress intended to protect and the second prong is satisfied.  *Id.*; *see also Rendon v. Cherry Creek Mort. LLC*, 2022 WL 17824003, at *4 (S.D. Cal. Dec. 20, 2022) (finding the plaintiff had standing following *Nayab* because "§ 1681b(f)(1), was established to protect [her] concrete privacy interest" and "as alleged, once Defendant ran Plaintiff's credit report without a permissible purpose, Plaintiff's privacy interest was harmed"); *Rodriguez v. Your First Choice, LLC*, 2017 WL 4855406, at *5 (D. Nev. Oct.

8

25, 2017) (finding allegations sufficient to establish Article III standing where the plaintiff alleged the defendant "obtained her credit report for an impermissible purpose," because such a "claim implicates her concrete interest in the privacy of her personal credit information, the very interest Congress intended to protect through § 1681b").  Because Graham's allegations are sufficient to establish standing under Article III, the motion to dismiss under Rule 12(b)(1) is denied.

### B.      Claim One: violations of the FCRA

The FCRA provides standards for credit reporting agencies to "exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."  15 U.S.C. § 1681(a)(4).  The FCRA also provides "a mechanism for monitoring and limiting the actions of parties who request credit information from credit reporting agencies."  *Williams v. AT & T Wireless Servs.*, *Inc.*, 5 F. Supp. 2d 1142, 1148 (W.D. Wash. 1998).  Thus, the FCRA requires "reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information."  15 U.S.C. § 1681(b).  Toward that end, requesting parties must have a "permissible purpose" to obtain a credit report under the FCRA.  *See* 15 U.S.C. § 1681b.

With these requirements in mind, to state a claim under the FCRA "against a party for requesting a consumer credit report without a permissible purpose," a plaintiff must allege: "(1) the defendant obtained a consumer credit report from a Consumer Reporting Agency, (2) without a permissible purpose, and (3) the defendant acted willfully or negligently in requesting the report."  *Demay v. Wells Fargo Home Mortg., Inc.*, 279 F.Supp.3d 1005, 1008 (N.D. Cal. 2017) (citing *Vandyke v. Northern Leasing Sys., Inc.*, 2009 WL 3320464, at *3 (E.D. Cal. 2009)).  Graham contends Sunnova violated the FCRA "by willfully and/or negligently obtaining [her] consumer credit report without a statutorily permissible purpose."  (Doc. 12 at 4, citing 15 U.S.C. § 1681b; 1681n and §1681o.)

#### 1.      Permissible purpose

Section 1681b identifies the "permissible purposes" for which a consumer report may be furnished by credit reporting agency "[t]o a person which it has reason to believe"—

> (A) intends to use the information in connection with a credit transaction
> involving the consumer on whom the information is to be furnished and

involving the extension of credit to, or review or collection of an account of, the consumer; or

(B) intends to use the information for employment purposes; or

(C) intends to use the information in connection with the underwriting of insurance involving the consumer; or

(D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or

(E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or

(F) otherwise has a legitimate business need for the information—
    (i) in connection with a business transaction that is initiated by the consumer; or
    (ii) to review an account to determine whether the consumer continues to meet the terms of the account.

(G) executive departments and agencies in connection with the issuance of government-sponsored individually-billed travel charge cards.

15 U.S.C. § 1681b.  Pursuant to the FCRA, the reports may be furnished under any of these provisions, "and no other."  *Id.*, § 1681b(a).  In addition, the FCRA provides that a credit report may not be obtained "for any purpose unless—(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification."  15 U.S.C. § 1681b(f).

       Sunnova asserts that Graham's claim under the FCRA fails because she "fails to plead that Sunnova obtained her credit without a permissible purpose."  (Doc. 15 at 5.)  Sunnova observes that in *Caruso v. Calvary Portfolio SVCS*, 019 WL 4747679 (S.D. Cal. Sept. 30, 2019), the Southern District "dismissed the plaintiff's FCRA claim where '[p]laintiff's complaint 'offers no factual basis to infer what purpose—permissible or impermissible—[defendants] had in making' inquiries on his credit report, and therefore it does not allege a plausible claim that defendants' purposes for obtaining his credit report were impermissible.'"  (Doc. 15 at 5-6, quoting *Caruso*, 2019 WL 4747679, at *6 [modifications in original].)  Sunnova contends Graham's allegations suffer the same deficiencies as those identified in *Caruso*, as Graham "offers no factual basis to infer what impermissible purpose

10

1    Sunnova had in running her credit report." (*Id.* at 6.)  In addition, though Graham alleges she did not

2    give consent for the report to be run, Sunnova maintains "her consent was not necessary." (*Id.*)  Thus,

3    Sunnova argues the claim "should be dismissed for failure to state a claim…." (*Id.*)

4          Importantly, the Ninth Circuit explicitly rejected the pleading burden Sunnova suggests, stating

5    a district court "erred in holding that … the plaintiff[] has the burden of pleading the actual purpose"

6    behind the procurement of a credit report.  *Nayab*, 942 F.3d at 493.  Instead, the Ninth Circuit indicated

7    that "[a] plaintiff need allege only facts giving rise to a reasonable inference that the defendant obtained

8    his or her credit report in violation of § 1681b(f)(1) to meet their burden of pleading."  *Nayab*, 942 F.3d

9    at 493.  In contrast, "the defendant[] has the burden of pleading it had an authorized purpose to acquire

10   [a] credit report."  *Id.* at 495.  The Ninth Circuit explained, "placing the burden on the plaintiff would

11   be unfair, as it would require the plaintiff to plead a negative fact that would generally be peculiarly

12   within the knowledge of the defendant."  *Id.*  Sunnova's reliance upon *Caruso*—which was decided

13   before the Ninth Circuit clarified the pleading burdens in *Nayab*—is misplaced.

14         Graham alleges a Sunnova sales representative visited her home, and Graham "merely

15   receiv[e]d information about the solar product."  (*See* Doc. 12 at 2, ¶¶ 7-12.)  Given the allegation that

16   the Sunnova representative made a "sales visit," the Court may infer Sunnova did not run the report

17   for "employment purposes," and was not looking to underwrite an insurance policy.  *See* 15 U.S.C. §

18   1681b(B), (C).  Similarly, the allegations support a conclusion that the purpose was not to evaluate

19   Graham's eligibility for a license or benefit, or in any manner connected "with the issuance of a

20   government sponsored individually-billed travel charge cards."  *See* 15 U.S.C. § 1681b(D), (F).

21   Graham also asserts that she "had no prior or ongoing relationship or transactions with [Sunnova]."

22   (*Id.*, ¶ 12.)  This supports a reasonable inference that Graham did not have "an existing credit

23   obligation," credit transaction, or account with Sunnova.  *See* 15 U.S.C. § 1681b(A), (E), (F)(ii).

24   Finally, because Graham explicitly alleges that "[a]t no point during the interaction did [she] initiate a

25   transaction [Sunnova]," and she did not agree to any transaction "for solar or otherwise," with

26   Sunnova (*id.*, ¶¶ 11-13), the Court can infer Sunnova did not yet have "a legitimate business need for

27   the information… in connection with a business transaction."  *See* 15 U.S.C. § 1681b(F)(i).

28   Consequently, the allegations in the FAC are sufficient for the Court to reasonably infer Sunnova did

1   not have a permissible purpose among the six identified under Section 1681b. *See, e.g., Nayab*, 942

2   F.3d at 497 (finding a claim was cognizable where the allegations "rule[d] out many of the potential

3   authorized purposes for obtaining a credit report"); *see also Gregory v. Firstpoint Collection Res.,*

4   *Inc.,* 2024 WL 100950, at *1-2 (E.D. Cal. Jan. 9, 2024) (finding allegations sufficient "to give rise to a

5   reasonable inference that defendants obtained her credit report for an unauthorized purpose" where the

6   plaintiff alleged she did not consent to the access, never maintained accounts with the defendants, and

7   "did not initiate credit transactions with them").

8                    2.      Noncompliance

9        The FCRA provides private right of actions for willful and negligent noncompliance by those

10  requesting credit reports. 15 U.S.C. §§ 1681n, 1681o.  Whether willful or negligent noncompliance, a

11  plaintiff must also allege damages to support a claim under the FCRA.  *See Gorman v. Wolpoff &*

12  *Abramson, LLP,* 552 F.3d 1008, 1032-33 (9th Cir. 2009).

13                   a.      Willful noncompliance

14       To state a claim for a willful violation under Section 1681n, a plaintiff must allege "the

15  defendant obtained plaintiff's credit reports under false pretenses or knowingly without a permissible

16  purpose, and that the defendant acted willfully when it requested the report."  *Vandyke v. Northern*

17  *Leasing Sys., Inc.*, 2009 WL 3320464, at *3 (E.D. Cal. Oct. 14, 2009) (citing *Myers v. Bennett Law*

18  *Offices,* 238 F.Supp.2d 1196, 1201 (D. Nev. 2002)).  "Willful" conduct also includes "knowing and

19  reckless" violations.  *Mnatsakanyan v. Goldsmith & Hull APC,* 2013 WL 10155707, at *7 (C.D. Cal.

20  May 14, 2013).  Allegations that a defendant had knowledge of the FCRA's requirements prior to any

21  violation "can be read to allege willfulness in terms of either knowledge or recklessness."  *Travelers*

22  *Prop. Cas. Co. v. Kan. City Landsmen, L.L.C.*, 592 F. App'x 876, 889 (11th Cir. 2015).

23       Sunnova contends Graham "attempts to plead a cause of action under 15 U.S.C. § 1681n by

24  amending the complaint to add that Sunnova 'had actual knowledge' that Plaintiff did not authorize

25  any inquiry and that Sunnova 'knew or should have known' it was subject to the FCRA."  (Doc. 15 at

26  6-7, quoting FAC ¶¶ 25-26 [Doc. 12 at 3].)  According to Sunnova, "these conclusory statements are

27  insufficient to state a claim for a violation of the FCRA, or for damages."  (Doc. 15 at 7, citing *Pyle v.*

28  *First Nat'l Collection Bureau*, 2012 WL 1413970 at *4 (E.D. Cal. Apr. 23, 2012).)  Thus, Sunnova

argues that Graham "cannot demonstrate a claim for willfulness…"  (*Id.* at 6, emphasis omitted.)

As Sunnova argues, this Court previously observed that a "[p]laintiff's bare assertion that Defendant violated the FCRA, without providing a factual basis for those assertions, does not sufficiently state a claim."  *See Pyle*, 2012 WL1413970 at *4.  Contrary to Sunnova's characterization, Graham's allegations are more than conclusory, bare assertions.  Graham alleges that "Sunnova *obtained [her] consumer report under false pretenses* to the credit bureau because Plaintiff never provided permission, nor did she initiate or agree to any transaction with Defendant."  (Doc. 12 at 3, ¶ 24, emphasis added.)  Graham also asserts her signature was forged on the authorization for her credit report to be run after she informed the representative "she did not want her credit pulled and did not give Sunnova permission to run a credit check."  (*Id.* at 2, ¶¶ 9, 15.)  These allegations support a conclusion that Sunnova obtained the credit report under false pretenses—having forged Graham's signature—and knowingly acted in obtaining the report without a permissible purpose because the Sunnova representative was clearly aware that Graham had not initiated a business transaction with the company or requested the extension of credit.

Graham alleges Sunnova was "was well aware that it was subject to the FCRA, and it knew or should have known about its legal obligations under the FCRA."  (Doc. 12 at 3, ¶ 26.)  In addition, Graham asserts that Sunnova "has contracts with credit reporting agencies such as Equifax in which it agrees it may obtain and use a consumer report only for a permissible purpose."  (*Id.* at 4, ¶ 27.)  These allegations are sufficient to support a conclusion that the alleged noncompliance was willful or, at a minimum, reckless.  *See, e.g., Milne v. Sears Holdings Corp.*, 2016 WL 1660163, at *4 (N.D. Cal. Apr. 26, 2016) ("On a motion to dismiss under Rule 12(b)(6), assertions that a defendant was aware of the FCRA, but failed to comply with its requirements, are sufficient to support an allegation of willfulness and to avoid dismissal." [internal quotation marks, citations omitted]; *Hawkins v. S2Verify LLC*, 2016 WL 107197, at *3 (N.D. Cal. Jan. 11, 2016) (allegations that a defendant was aware that it was subject to the FCRA and knew, or should have known, about its legal obligations under the FCRA were sufficient a to plausibly demonstrate that the defendant was at least reckless).

### b.      Negligent noncompliance

Liability for negligent noncompliance is established under Section 1681o.  *See Nelson v. Chase*

1   *Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002).  The First Circuit explained, "A

2   negligent noncompliance claim resembles a garden-variety negligence claim, with a substantive

3   provision of the FCRA providing the relevant duty and standard of care."  *McIntyre v. RentGrow, Inc.*,

4   34 F.4th 87, 92 (2022).  Toward this end, a claim for negligent noncompliance requires a plaintiff to

5   show actual damages.  *See* 15 U.S.C. § 1681o(a); *Banga v. Experian Info. Solutions, Inc.*, 473 Fed.

6   Appx. 699, 700 (9th Cir. 2012) (affirming summary judgment for a claim under Section 1681o

7   because the plaintiff  failed to raise a triable dispute as to whether defendants' conduct resulted in

8   actual damages"); *Soghomonian v. United States*, 278 F.Supp. 1151, 1169 (E.D. Cal. 2003) ("The

9   FCRA imposes civil liability for negligent noncompliance with the FCRA in favor of 'any consumer'

10   who can show 'any actual damages sustained by the consumer' as a result of the noncompliance.").

11          As discussed above, the allegations support a conclusion that Sunnova breached its duty under

12   the FCRA to only seek a credit report with a permissible purpose.  However, the parties dispute

13   whether Graham sufficiently alleged actual damages to support a claim for negligent noncompliance.

14   Sunnova maintains, "Plaintiff has offered nothing other than conclusory statements to demonstrate any

15   actual damages she has allegedly suffered, and only offers vague assertions that she has suffered

16   emotional distress."  (Doc. 15 at 7, citing FAC ¶ 32 [Doc. 12 at 4].)  On the other hand, Graham

17   asserts the allegations are sufficient, noting she asserts that "Sunnova's unlawful acquisition and use of

18   [her] consumer report caused her damages, including emotional distress, worry, aggravation, and

19   damage to her credit score." (Doc. 20 at 12, citing FAC ¶¶ 18, 32-33 [Doc. 12 at 3-4].)

20          In the FAC, Graham alleges her "credit profile and credit history has been adversely affected as

21   a result of Defendant's actions."  (Doc. 12 at 4, ¶ 33.)  Importantly, courts in the Ninth Circuit have

22   determined that damage to a credit score is insufficient to support a conclusion that a plaintiff suffered

23   actual damages.  *See, e.g., Messano v. Experian Info Solutions, Inc.*, 251 F.Supp.3d 1309, 1316 (N.D.

24   Cal. 2017) ("Plaintiff would need to plead specific allegations regarding any actual damages that she

25   incurred due to Equifax's alleged violation, keeping in mind that a lowered credit score, without more,

26   likely does not constitute actual damages"); *Campbell v. Anniemac Home Mortg.*, 2017 WL 8180578,

27   at *3 (C.D. Cal. Feb. 23, 2017) ("a lower credit score" was insufficient  to show actual damages

28   [emphasis omitted]).  As the Northern District explained, "This is logical because, absent an allegation

that plaintiff was denied credit, lost credit, had his credit limits lowered, or was required to pay a higher interest rate for credit,' the negative effects of a lowered credit score did not cause "actual" harm." *Ramos v. Experian Info. Solutions, Inc.*, 2017 WL 1047019, at *9-10 (N.D. Cal. Mar. 20, 2017) (collecting cases). Additional allegations such as "an inability to obtain financing" following a negative impact to a credit score may show actual damages. *Roybal v. Equifax*, 2008 WL 4532447, at *7 (E.D. Cal. Oct. 9, 2008); *see also Vandyke*, 2009 WL 3320464, at *4 (actual damages are shown where the "plaintiff was refused credit or offered higher interest rates as a result of delinquencies in her credit report, or that she lost wages due to time spent in dealing with credit problems caused by defendant"). Because Graham alleges only that her credit profile and credit report were "adversely affected," such allegations are insufficient to show actual damages.

Importantly, however, Graham also alleges that she "suffered mental and emotional distress, worry, and aggravation as a result of Defendant's actions."  (Doc. 12 at 4, ¶ 32.)  The Ninth Circuit observed that "the term 'actual damages' has been interpreted to include recovery for emotional distress and humiliation."  *Guimond v. Trans Union Credit Info. Co*., 45 F.3d 1329, 1333 (9th Cir. 1995).  Therefore, Graham's allegations are sufficient to establish actual damages to support her claim for negligence noncompliance under Section 1681o.  *See id.*; *see also Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1069 (9th Cir. 2008) (observing the Court found "emotional distress" constitutes "actual damages" for a claim under Section 1681o and reversing summary judgment).

### 3.   Statutory damages

Sunnova suggests that Graham's allegations "are also insufficient to support a demand for punitive damages."  (Doc. 15 at 7, citing *Pyle*, 2012 WL1413970 at *4.)  A plaintiff who establishes willful noncompliance under Section 1681 may be awarded:

(1)
      (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

      (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

(2) such amount of punitive damages as the court may allow; and

> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n; *see also Messano*, 251 F.Supp.3d at 1315-16 (willful noncompliance of a defendant "entitles to [a] plaintiff to punitive damages, reasonable costs and fees, as well as either actual damages or statutory damages").  Because Graham sufficiently alleges willful noncompliance by Sunnova, as discussed above, she may seek punitive damages pursuant to Section 1681n.  Consequently, to the extent Sunnova seeks dismissal claim for punitive damages, the motion is denied.

###### C.     Claim Two: violation of the CCRAA

California's Consumer Credit Reporting Agencies Act is the state analogue to the FCRA and mirrors its provisions.  *Guimond v. Trans Union Credit Information Co*., 45 F.3d 1329, 1335 (9th Cir. 1995); *see also* Cal. Civ. Code § 1785.11(a); *Kang v. Credit Bureau Connection, Inc.*, (E.D. Cal. Mar. 19, 2019).  Thus, the circumstances under which the CCRAA authorizes a credit report to be obtained "are essentially those identified in the FCRA."  *Mnatsakanyan v. Cal. Prof. Corp. Calvary Portfolio Services, LLC,* 2013 WL 10156242, at \*7 (C.D. Cal. Jan. 22, 2013).  The Ninth Circuit indicated that the Court "operate[s] under the assumption that California courts would interpret the FCRA and CCRAA consistently."  *Carvalho v. Equifax Info. Servs*., *LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (citing *Olson v. Six Rivers Nat'l Bank*, 3 Cal. Rptr. 3d 301, 309 (Ct. App. 2003)).

Because Plaintiff alleges facts sufficient to support a claim under the FCRA, the Court finds the allegations are likewise sufficient to state a claim under the CCRAA.  *See Mnatsakanyan,* 2013 WL 10156242, at \*7 (declining a motion to dismiss a claim under the CCRAA where the plaintiff stated a cognizable claim under the FCRA).

###### D.     Claim Three: Invasion of Privacy

Graham asserts seeks to hold Sunnova liable for invasion of privacy.  (Doc. 12 at 6.)  Sunnova argues the claim should be dismissed because it is preempted under Section 1681h(e) of the FCRA.[2] (Doc. 15 at 9.)  In addition, Sunnova contends Graham fails to "plead facts that could support an invasion of privacy claim."  (*Id.*)

---

[2] Sunnova identifies the relevant provision as Section 1681(e), which appears to be a typographical error, as Sunnova quotes Section 1681h(e). (*See* Doc. 15 at 9.)

16

1        1.      Preemption

2        Assuming Graham seeks to hold Sunnova liable for invasion of privacy under state common

3   law, the Court addresses whether the claim is preempted, such as leave to amend could be futile.  The

4   FCRA provides that some invasion of privacy claims arising under state law are preempted by the

5   federal law.  Specifically, the FCRA provides in relevant part:

6            Except as provided in sections 1681n and 1681o of this title, no consumer
             may bring any action or proceeding in the nature of defamation, invasion
7            of privacy, or negligence *with respect to the reporting of information*
             against any … user of information … based on information disclosed
8            pursuant to section 1681g, 1681h, or 1681m of this title, or based on
             information disclosed by a user of a consumer report to or for a consumer
9            against whom the user has taken adverse action, based in whole or in part
             on the report[,] except as to false information furnished with malice or
10           willful intent to injure such consumer.

11  15 U.S.C. § 1681h(e).  Thus, the section explicitly preempts only invasion of privacy claims that relate

12  to "the reporting of information."  *See id.*  Because Graham's invasion of privacy claim relates to

13  *obtaining* a credit report without a permissible purpose, rather than the *reporting* of any information,

14  her invasion of privacy claim is not preempted under Section 1681h(e).[3]

15       2.      Invasion of privacy

16       Graham alleges "Sunnova intentionally intruded upon [her] solitude and seclusion," and seeks

17  to hold Sunnova liable for invasion of her privacy.  (Doc. 12 at 6, ¶¶ 33-35.)  Invasion of privacy is a

18  California common law tort, and "intrusion upon seclusion" is a form of the tort.  *Joseph v. J.J. Mac*

19  *Intyre Companies, L.L.C.*, 238 F. Supp. 2d 1158, 1169 (N.D. Cal. 2002) (internal citations omitted);

20  *see also Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 231, (1998) ("One who intentionally

21  intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or

22  concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly

23  offensive to a reasonable person.") [quoting Restatement (2d) of Torts § 652B].

24       "To state a claim for intrusion upon seclusion under California common law, a plaintiff must

25  show that: (1) a defendant 'intentionally intrude[d] into a place, conversation, or matter as to which the

26  plaintiff has a reasonable expectation of privacy[,]' and (2) that the intrusion 'occurred in a manner

27

28  [3] Indeed, Sunnova acknowledges that Section 1681h(e) "may allow invasion of privacy claims to proceed when the
    conduct alleged also concerns negligent or willful violations under §1681n and § 1681o." (Doc. 15 at 9, emphasis omitted.)

highly offensive to a reasonable person.'" *Davis v. Facebook Inc.,* (*In re Facebook, Inc. Internet Tracking Litig.*) 956 F. 3d 589, 601 (9th Cir. 2020) (quoting *Hernandez v. Hillsides, Inc.,* 47 Cal. 4th 272, 286 (2009)). Thus, a claim for intrusion upon seclusion does not require a publication, but instead "the intrusion itself makes the defendant subject to liability." *Nayab*, 942 F.3d at 491 (quoting Restatement (Second) of Torts § 652B).

### a.   Reasonable expectation of privacy

Sunnova does not appear to argue that Graham lacked a reasonable expectation of privacy, and instead admits that "a plaintiff may have a privacy interest in personal information." (Doc. 15 at 10.) Indeed, the Ninth Circuit has acknowledged "the right to privacy in one's consumer credit report." *Nayab*, 942 F.3d at 490. Graham sufficiently alleges a reasonable expectation of privacy in her credit report and the information it contained.

### b.   Whether the intrusion was highly offensive

Sunnova contends the running of Graham's credit report "does not rise to the level of 'highly offensive to a reasonable person' necessary to state a claim for intrusion upon seclusion." (Doc. 15 at 10.) However, Sunnova also acknowledges that when a credit report is obtained without a permissible purpose under the FCRA, it may rise to the level of intrusion contemplated. (*Id.*, citing *Nayab*, 942 F.3d at 492.)

In *Nayab*, the Court observed that when "a third party obtains the consumer's credit report in violation of 15 U.S.C. § 1681b(f)—that is, for a purpose not authorized by statute—the consumer is harmed because he or she is deprived of the right to keep private the sensitive information about his or her person." *Id.*, 942 F.3d at 492. The Ninth Circuit held, "This harm is highly offensive and is not trivial because a credit report can contain highly personal information." *Id.* As discussed above, Graham alleges facts sufficient to support a conclusion that Sunnova acted without a permissible purpose in obtaining her credit report. Consequently, Graham identifies a "highly offensive" harm and states a cognizable claim for invasion of privacy in the form of intrusion upon seclusion.

## V.   Conclusion and Order

For the reasons set forth above, the Court **ORDERS**:

1.   Defendants' motion to dismiss under Rule 12(b)(1) is **DENIED**.

   2.      Defendant's motion to dismiss under Rule 12(b)(6) is **DENIED**.

IT IS SO ORDERED.

   Dated:   **February 28, 2024**                      _____
                                                        UNITED STATES DISTRICT JUDGE